UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW CATALDO,

    Plaintiff,

v.                                                       Case No.: 8:08-CV-2207-T-27EAJ

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, affirms the ALJ's decision to deny Plaintiff's claim.

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

---

[1] The District Judge has referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979).[2]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.1987).

**Background**

Plaintiff filed his application for DIB on July 1, 2003, with an alleged onset of disability on June 15, 2002. (T 154) Plaintiff alleges disability due to a seizure disorder. (T 161) The Commissioner denied Plaintiff's claim initially and upon reconsideration. (T 41) Following an administrative hearing, the ALJ denied Plaintiff's claim in a decision dated November 4, 2005. (T 41-47) The Appeals Council reviewed the ALJ's decision and, on May 25, 2006, remanded the case to the ALJ. (T 94-96)

The Appeals Council directed the ALJ to do the following: (1) evaluate Plaintiff's seizure disorder in a manner consistent with Social Security Ruling 87-6; (2) determine whether Plaintiff engaged in substantial gainful activity after his alleged disability onset date; (3) determine whether the work-related limitations assumed by the vocational expert ("VE") were identical to the limitations included in Plaintiff's residual functional capacity ("RFC"); (4) more carefully consider

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

2

the evidence pertaining to Plaintiff's subjective complaints, particularly evidence from Plaintiff's former employers; (5) obtain any updated records from Plaintiff's treating sources; (6) obtain evidence from a medical expert, if warranted, to clarify the nature, severity, onset, and duration of Plaintiff's impairments and functional limitations; (7) determine Plaintiff's RFC; and (8) obtain supplemental evidence from a VE, if warranted, to clarify the effect of Plaintiff's limitations on his occupational base. (T 95-96)

Following a supplemental administrative hearing, the ALJ denied Plaintiff's claim again in a decision dated November 16, 2007. (T 17-35) On September 5, 2008, the Appeals Council declined to review the ALJ's decision upon remand, making the ALJ's second decision the final decision of the Commissioner. (T 4-6)

At the time of the supplemental hearing, Plaintiff was twenty-four years old with less than a high school education (T 602) and had past relevant work experience as an assistant for an electrical company and a grocery store clerk. (T 20) The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 15, 2002. (T 19) The ALJ further determined that Plaintiff had the severe impairments of:

> seizure disorder; left ankle fracture, status-post open reduction internal fixation ("ORIF"); migraine headaches; major depression, severe without psychosis; cognitive dysfunction, not otherwise specified ("NOS"); possible borderline intellectual functioning; panic disorder without agoraphobia; generalized anxiety disorder; and, polysubstance abuse.

(T 21) The ALJ concluded that Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (T 26) According to the ALJ, Plaintiff had the RFC to perform a limited range of light, unskilled work but could not work around hazards, climb, or do more than occasional pushing or pulling. (T 30)

3

Plaintiff was also to avoid excessive physical exertion, working at extreme temperatures, or exposure to excessive dust. (Id.) In terms of mental restrictions, Plaintiff was limited to "unskilled, low-stress, entry-level work activities defined as involving one- to two-step processes, routine and repetitive tasks, involving things rather than people." (Id.) Based on these determinations, the ALJ found Plaintiff capable of working as a cafeteria attendant and a copy machine operator (T 34) based on the testimony of a VE. (T 628) Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and denied Plaintiff's claim for DIB. (T 35)

The ALJ's decision adequately summarized the medical evidence, which will not be repeated here except as necessary to address the issues presented.

**Discussion**

Plaintiff alleges the Commissioner: (1) improperly rejected the opinions of Plaintiff's treating sources; (2) failed to comply with the Appeals Council's order; (3) disregarded a consultative examiner's psychological evaluation of Plaintiff; (4) posed an incomplete hypothetical to the VE; and (5) improperly discredited Plaintiff's grandmother's testimony (Dkt. 12). Plaintiff also argues that the Appeals Council failed to consider new medical evidence submitted after the ALJ's second decision (Id.).

1.  Weight Assigned to Treating Sources

Plaintiff argues that the ALJ improperly rejected the opinions of Plaintiff's treating physicians Nayeem Karim, D.O. ("Dr. Karim")[3] and Daniel Cabello, M.D. ("Dr. Cabello") and that

---

[3] The ALJ and Plaintiff incorrectly refer to "Dr. Khan" as one of Plaintiff's treating neurologists (Dkt. 122 at 16). (T 33) The physician they are referring to, however, is Dr. Karim. Drs. Khan and Karim practiced together at Neuro-Care of Virginia, but Dr. Karim treated Plaintiff. (T 563)

4

their opinions should therefore be accepted as true (Dkt. 12 at 17).

Generally, a treating physician's opinion commands substantial or considerable weight unless good cause warrants otherwise. Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam) (citation omitted). Good cause for discrediting a treating physician's opinion exists where evidence does not bolster the opinion, the evidence supports a contradictory finding, or the opinion conflicts with the physician's own medical records. See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). Consequently, an ALJ may discount a treating physician's opinion where it lacks support from objective medical evidence or makes wholly conclusory findings inconsistent with the record, so long as substantial medical evidence corroborates the ALJ's explanation. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (per curiam); 20 C.F.R. § 404.1527(d)(2).

Plaintiff's argument that the ALJ discredited Dr. Cabello's opinions is without merit. To the contrary, the ALJ examined Dr. Cabello's findings in detail and relied on them in concluding that Plaintiff was not disabled. (T 22-23, 26, 28, 32) Dr. Cabello, an epileptologist, treated Plaintiff from 2004 through 2007. (T 291-97, 424-27, 566) In August 2004, Plaintiff told Dr. Cabello that his last grand mal seizure had occurred five years earlier when he did not take his medication and was using alcohol and drugs, thus lowering his seizure threshold. (T 295) Plaintiff complained of "auras" once a month and admitted that he sometimes forgot to take his medication. (Id.) Dr. Cabello noted that Plaintiff's seizures were "well-controlled on two medications at moderate doses" and that Plaintiff was "happy with his current situation." (T 296) At Plaintiff's next appointment, Dr. Cabello observed that Plaintiff was "doing extremely well" despite "abnormalities in both hemispheres" as detected by a brain scan. (T 293) Plaintiff stated that he had not experienced any "auras" (small

5

seizure events) in the past month; Plaintiff declined a long-term video EEG to investigate the cause of his seizures because it would involve a hospital admission and he was doing well at work. (T 293) In November 2004, Plaintiff told Dr. Cabello that he had not had an "aura" in five months; Dr. Cabello made no changes to Plaintiff's medication. (T 292)

In June 2005, Plaintiff reported to Dr. Cabello that two weeks earlier he had experienced a complex partial seizure at home but that he did not seek medical help, did not inform Dr. Cabello's office, and did not increase the level of his medications. (T 291) Six months later, during a follow-up appointment, Plaintiff told Dr. Cabello that he had decided to reduce his medications on his own several months earlier. (T 424) During his final visit with Dr. Cabello in June 2007, Plaintiff reported five recent seizures. (T 566) Dr. Cabello's treatment note does not indicate the intensity of the seizures, however, and Dr. Cabello stated that Plaintiff was "doing well" and did not change Plaintiff's medication. (Id.)

After discussing Dr. Cabello's treatment records in detail, the ALJ found Dr. Cabello's records (along with the records of Michael Franklin, M.D. ("Dr. Franklin"), Plaintiff's previous neurologist) "more reliable" than those of one-time examiner Dr. Karim. (T 28) In finding that Plaintiff's testimony was not fully credible, the ALJ relied in part on Dr. Cabello's treatment notes and considered Dr. Cabello's opinion supportive of a finding of not disabled. (T 32)

Plaintiff next submits that the ALJ improperly discredited Dr. Karim's opinion "in a single line" (Dkt. 12 at 16). However, the ALJ referred to Dr. Karim's one-paragraph opinion twice, each time explaining why it was unreliable. (T 28, 33) Dr. Karim examined Plaintiff on March 21, 2007, and noted that Plaintiff's "seizures have not been well controlled on medications" since he was five years old and that he was "not able to maintain a regular job." (T 563) Dr. Karim noted that Plaintiff

6

"averages about 15 seizures per month while being on medication." (Id.)

The ALJ properly rejected this opinion as inconsistent with Dr. Cabello's treatment records which indicated that Plaintiff – while not completely seizure-free – had his seizures under control with medication and was doing well. First, Dr. Karim met with Plaintiff only once. As a one-time examiner his opinion is not entitled to deference because he is not considered a treating physician. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). Moreover, Dr. Karim's statement concerning the frequency of Plaintiff's seizures conflicted with those of Dr. Cabello, whose June 2007 treatment note mentioned five recent seizures of uncertain intensity, not fifteen, and indicated Plaintiff was "doing well" and feeling less depressed after "solving some of his family problems." (T 566) The ALJ's decision to reject Dr. Karim's opinion is supported by substantial evidence.

2. The ALJ's Compliance with the Appeals Council's Order

Plaintiff contends that the ALJ did not properly evaluate his subjective complaints as directed by the Appeals Council, particularly in light of statements from his former employers about the frequent breaks Plaintiff was afforded due to his epilepsy (Dkt. 12 at 2-4). Plaintiff asserts that these statements are evidence that he is not able to work on a sustained basis.[4]

Plaintiff was a part-time stocker/bagboy at Publix Supermarkets from August 2002 through May 2005. (T 185) Patrick Helm, Plaintiff's supervisor at Publix, submitted a letter stating that Plaintiff "took breaks during shifts because of his condition." (Id.) According to Mr. Helm, the management staff at Publix "worked with [Plaintiff] the best we could to make sure he was not

---

[4] Plaintiff raised this issue with the Appeals Council in his request for review of the ALJ's second decision; (T 11, 665-67) the Appeals Council nevertheless affirmed the ALJ's decision.

7

under strain or stress while working." (Id.) Plaintiff also worked part-time at his uncle's business, Melton Electric, from 2005 through 2006. (T 190) Mr. Melton stated that Plaintiff required six or seven breaks per day and that his business took special precautions to maintain Plaintiff as an employee. (T 90, 190)

The Eleventh Circuit recognizes that pain and other subjective symptoms may disable a person, even when not objectively quantifiable. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam). As such, this Circuit applies a three-part "pain standard" when evaluating subjective complaints of pain and other subjective symptoms. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). Under this standard, a plaintiff must produce (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the pain resulting from the medical condition, or (3) evidence that the condition is so severe that it can reasonably be expected to cause the alleged pain. Id. (citation omitted). An ALJ may also consider effective treatments and a claimant's daily activities when assessing a claimant's pain. 20 C.F.R. § 404.1529(c)(3); see also Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989) (per curiam) (affirming an ALJ's consideration of a claimant's daily activities and the credibility of her testimony when applying the pain standard).

Plaintiff does not contest the ALJ's credibility finding as a whole. Rather, he argues that the ALJ did not properly consider the letters from Plaintiff's former employers in reaching the decision that Plaintiff is not credible. However, in addition to reviewing the letters, the ALJ questioned Plaintiff about any special considerations offered to him by his employers. (T 615-19) Plaintiff stated that he would take frequent breaks but that he worked every day "if he could." (T 617-18) He also testified that he could no longer work at Publix because it required him to "climb[] the

8

ladders and walk[]." (T 619) The ALJ ultimately found that Plaintiff's former employers' statements "somewhat support[ed]" Plaintiff's testimony that he took breaks often and missed work due to his seizure disorder. (T 21) Nevertheless, the ALJ discredited Plaintiff's testimony regarding the frequency of his seizures by referencing conflicting statements Plaintiff made to treating sources concerning how many times per month he experienced seizures. (T 33) The ALJ noted that "[t]he claimant also worked for many years as a grocery store stocker/bagboy, and there was nothing within this period that precluded him from performing these actions . . ." (Id.)

Specifically, during the time Plaintiff worked at Publix, he did not report to his treating neurologists that work activities aggravated his seizure condition or induced seizures. In fact, Dr. Franklin was apprised of Plaintiff's work at Publix during an office visit in May 2003 and did not prescribe any work restrictions. (T 256) Dr. Franklin emphasized that Plaintiff "might have had some vague auras which are ill-described, though in the last four and a half months, he hasn't had any major seizures." (T 256) In August 2004, Plaintiff told Dr. Cabello that he was "doing very well at work", (T 293) and Dr. Cabello stated that Plaintiff overall was "doing extremely well." (Id.) At that time, Plaintiff's most recent grand mal seizure was "five years ago in the setting of noncompliance with his medication, alcohol intake and use of illicit drugs." (T 295) In November 2004, Dr. Cabello observed that Plaintiff "ha[d] been seizure free for almost a year" and did not prescribe work restrictions. (T 292)

The ALJ discredited Plaintiff's subjective complaints by highlighting these and other inconsistencies that are supported by the record. (T 32-33) The ALJ considered the statements from Plaintiff's former employers in compliance with the Appeals Council's directive. Substantial evidence supports the ALJ's decision to not fully credit the statements from Plaintiff's former

employers regarding Plaintiff's need for breaks or other accommodations during the work day. See generally Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (resolving conflicts of evidence is duty of ALJ); Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984) (per curiam) (same).

3. Dr. Hodan's Psychological Evaluation

Plaintiff argues that the ALJ failed to consider Plaintiff's counsel's November 7, 2009 letter to the ALJ addressing the similarities between two post-hearing psychological evaluations, one performed at the ALJ's request by Gerald Hodan, Ph.D. ("Dr. Hodan") and the other performed at Plaintiff's request by Michael Eastridge, Ph.D. ("Dr. Eastridge"). The ALJ placed greater weight on Dr. Hodan's opinion as it was more consistent with the medical records from Plaintiff's treating sources. (T 33)

The ALJ is not required to reference counsel's letter in his opinion. Plaintiff points to no case or statutory law indicating otherwise. To the extent Plaintiff argues that the ALJ's reliance on Dr. Hodan's opinion is misplaced, this too is without merit. The ALJ analyzed in detail the two psychological evaluations and emphasized their similarities. (T 25-26) For example, both Dr. Hodan and Dr. Eastridge diagnosed Plaintiff with major depression and the mental impairments of panic disorder, anxiety disorder, and polysubstance abuse. (T 26) The ALJ actually relied in part on Dr. Eastridge's opinion that Plaintiff suffered from cognitive impairments and major depression in formulating Plaintiff's RFC. (T 26, 30)

Further, Dr. Eastridge assigned Plaintiff a Global Assessment Functioning ("GAF") score of 45; (T 570) Plaintiff's GAF according to Dr. Hodan was 50. (T 594) Both scores indicate "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning."

Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 34 (4th ed. text rev. 2000).[5]
The ALJ referenced these scores in evaluating the two reports. (T 25, 26)  Although Plaintiff argues that Plaintiff's GAF scores indicate that he is disabled, a GAF score does not necessarily denote a particular type of limitation and does not require a finding of disability.  Kelley v. Astrue, No.5:08-cv-5-Oc-GRJ, 2009 WL 2731341, at *8 (M.D. Fla. Aug. 26, 2009).  In general, "a GAF score of 50 or below is not in and of itself determinative of disability."  Wisner v. Astrue, 496 F. Supp. 2d 1299, 1304 (N.D. Ala. 2007).

Ultimately, the ALJ assigned greater weight to Dr. Hodan's report which was more extensive than Dr. Eastridge's because Dr. Hodan's finding that Plaintiff was able to understand, remember, and carry out simple instructions was consistent with other medical evidence. (T 33)   Although Plaintiff calls attention to Dr. Hodan's statement that "seizure activity would make [Plaintiff] an unreliable employee" (T 594), Dr. Hodan was referencing the opinion of one-time examiner Dr. Karim.  As discussed previously, Dr. Karim's notation that Plaintiff experienced up to fifteen seizures per month conflicts with statements Plaintiff made to his other treating sources and was dismissed by the ALJ. (T 563, 592)

Finally, Drs. Eastridge and Hodan were consultative examiners, not treating physicians.  As such, their opinions are not entitled to great weight.  See 20 C.F.R. § 404.1527(d).  The ALJ did not err by discrediting portions of Dr. Eastridge's initial report.

---

[5] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations.  DSM-IV at 32.  A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning.  Id. at 30.

11

4. <u>Incomplete Hypothetical</u>

According to Plaintiff, a complete hypothetical question would have incorporated all of Plaintiff's limitations as found by Ladapo Shyngle, M.D. ("Dr. Shyngle"), a consultative physician who performed a neurological examination of Plaintiff in October 2006 (Dkt. 12 at 13-16). (T 416-23) The ALJ relied in part on Dr. Shyngle's report in formulating Plaintiff's RFC. (T 33) Plaintiff also contends that the ALJ did not account for Plaintiff's moderate limitations with regard to attention, concentration, and memory. Dr. Hodan opined that Plaintiff suffered moderate limitations in these areas and the ALJ accepted this opinion. (T 26, 594)

In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted). However, the ALJ is required only to include the limitations the ALJ finds supported by the evidence in the hypothetical question to the VE. <u>See Crawford</u>, 363 F.3d at 1161. An ALJ may properly omit from a hypothetical question limitations that either are not supported by the medical evidence or are relieved by medication. <u>See Ingram v. Comm'r of Soc. Sec.</u>, 496 F.3d 1253, 1270 (11th Cir. 2007).

There is substantial evidence to support the assumptions in the ALJ's hypothetical question; the ALJ was justified in relying on the testimony of the VE in identifying jobs Plaintiff can perform consistent with his limitations. The ALJ posed the following hypothetical question to the ALJ:

> Assume a younger individual with a limited education precluded him from performing all but light work. No hazards, no climbing, and no more than occasional pushing and pulling. . . . No temperature extremes, clean air, and no excessive dust, and unskilled low stress defined as one and two step processes routine and repetitive tasks, and primarily working with things rather than people, entry level. With those limitations can you describe any work?

(T 628-29) The VE responded that the jobs of cafeteria attendant and copy machine operator are

12

consistent with these limitations. (T 629)

The ALJ rejected Dr. Shyngles's opinion that Plaintiff was limited to standing/walking for only two hours due to a left ankle fracture which occurred when Plaintiff jumped off a balcony in November 2006. (T 32-33, 447-52) Although the ALJ listed Plaintiff's left ankle fracture as one of his severe impairments, the ALJ accounted for this injury in the hypothetical when he included a limitation on climbing. (T 628-29) The ALJ disregarded Dr. Shyngles's limitation on standing/walking because Plaintiff sought "little or no follow up treatment" for the ankle fracture. (T 32) Additionally, Plaintiff told Dr. Shyngle that he experienced two to three grand mal seizures every week, a statement the ALJ disregarded as not credible in light of the medical evidence.[6] (T 33, 416)

Additionally, Plaintiff contends that the ALJ improperly excluded limitations with respect to attention, concentration, and memory as recognized by Dr. Hodan. However, Dr. Hodan ultimately opined that Plaintiff was capable of simple, routine, and repetitive tasks (T 594), a finding the ALJ incorporated into Plaintiff's RFC. (T 32)

The ALJ incorporated those limitations he found credible into the hypothetical question posed to the VE and properly omitted those that were not supported by the record. See Ingram, 496 F.3d at 1270. Therefore, the ALJ's hypothetical question was complete.

5.     Lay Witness Testimony

---

[6] Plaintiff argues that the ALJ should have included limitations on pushing/pulling, working at heights, and driving. The hypothetical questions posed by the ALJ, however, did include a limitation on excessive pushing and pulling, and a limitation for no work around hazards and no climbing. (T 628) Although the hypothetical question did not address driving, Plaintiff testified that he had a driver's license until it was taken from him as a result of a drug possession charge in 2007 (T 614); thus, Dr. Shyngle's limitation on driving – rendered in October 2006 – is not supported by the record.

13

Plaintiff submits that the ALJ improperly discredited Plaintiff's grandmother's testimony. Specifically, Plaintiff argues that the ALJ mentioned the testimony but did not state what the grandmother said or give specific reasons why the ALJ discredited it (Dkt. 12 at 13).

The ALJ is not required to make a specific credibility finding as to lay witness testimony if the ALJ's credibility finding as to the claimant sufficiently implies a rejection of lay witness testimony. See Osborn v. Barnhart, 194 Fed. App'x 654, 666 (11th Cir. 2006) (per curiam) (unpublished). Here, the ALJ characterized Ms. Cataldo's testimony as follows: "[S]he must constantly remind her grandson about things. She indicated that the slightest of things cause great stress." (T 31) The ALJ rejected Plaintiff's testimony and that of Ms. Cataldo "for likewise reasons." (T 32) The ALJ discussed Plaintiff's inconsistent statements regarding the frequency of his seizures, his previous work activity, and his alcohol and drug use as evidence affecting Plaintiff's credibility. (T 31-33) Plaintiff does not challenge the ALJ's finding that his testimony was less than credible.[7] Therefore, Plaintiff's argument that the ALJ inexplicably disregarded Ms. Cataldo's testimony is not supported.

6.  The Appeals Council's Consideration of New Evidence

Finally, Plaintiff maintains that the Appeals Council failed to consider evidence Plaintiff submitted after the date of the ALJ's second decision on November 16, 2007, including a supplemental report by Dr. Eastridge dated March 23, 2008, and Plaintiff's counsel's brief highlighting the ALJ's errors (Dkt. 12 at 7-12). (T 664-82) Dr. Eastridge's second report lists the records he relied on – dating from 2001 through 2007 – in formulating his opinion that Plaintiff "will

---

[7] Plaintiff argues instead that the ALJ improperly disregarded letters from his former employers in evaluating Plaintiff's subjective complaints. As discussed, this argument is without merit.

not be able to maintain consistent productive employment for the long term." (T 681) Nevertheless, the Appeals Council affirmed the ALJ's opinion. (T 4-6)

Under sentence four of section 405(g), a district court may review whether the Appeals Council properly denied review. Ingram, 496 F.3d at 1262. "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the administration law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Id. at 1261 (citation and internal quotation marks omitted). New evidence is material when "a reasonable possibility exists that the new evidence would change the administrative result." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).

Dr. Eastridge's second report is consistent with his initial findings (T 567-71) which the ALJ properly discredited. (T 25-26) The second report did not establish that Plaintiff was unable to perform a limited range of light work consistent with the functional limitations prescribed by the ALJ. Dr. Eastridge noted Plaintiff's statement that he had three seizures leading up to his appointment, suffered from severe depression, and had unstable living arrangements. (T 680) Evaluating Plaintiff's concentration skills, Dr. Eastridge found that Plaintiff would not be able to pay attention for fifteen minutes at a time while performing a sedentary activity. (T 680)

Nevertheless, there is no reasonable possibility that Dr. Eastridge's second report would change the result of the ALJ's decision. First, although Dr. Eastridge amended his previous report to list the medical records he reviewed in making his finding and performed additional tests designed to evaluate Plaintiff's psychological condition, Dr. Eastridge's report does not rely on new treatment records previously unavailable to either the Appeals Council or the ALJ. Compare Hoffman v. Astrue, 259 Fed. App'x 213, 220 (11th Cir. 2007) (per curiam) (unpublished) (remand not warranted

because new report submitted to Appeals Council was based on medical records already before the ALJ), with Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218-19 (11th Cir. 2001) (remanding case for consideration of new evidence when physician discovered plaintiff's herniated disc and performed corrective surgery after the ALJ found plaintiff not disabled). Second, Dr. Eastridge's findings are inconsistent with those of Dr. Cabello who did not restrict Plaintiff from working and who opined that Plaintiff's seizure disorder could be controlled with medication. (T 296) Dr. Eastridge's opinion is not entitled to the same weight as those of Plaintiff's treating physicians. Thus, the Appeals Council consideration of Dr. Eastridge's second report was proper.

## Conclusion

The decision of the Commissioner denying Plaintiff's applications for DIB should be affirmed. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

Dated: January 15 , 2010

ELIZABETH A JENKINS
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attaching the factual findings on appeal. <u>See</u> 28 U.S.C. 636(b)(1).